Anita BREINING, Individually and as Administratrix of the Estate of Lambert Breining and Stanley Breining and Robert Breining, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

Nos. 87–1385, 88–1368.

United States Court of Appeals, Fifth Circuit.

Dec. 12, 1988.

John Mundie, Walter L. Boyaki, El Paso, Tex., for plaintiff-appellant.

Mark Greenberg, Asst. U.S. Atty., El Paso, Tex., for defendant-appellee.

Before GEE, SNEED * and WILLIAMS, Circuit Judges.

GEE, Circuit Judge:

The plaintiffs brought an action against the defendants alleging negligence in the diagnosis and treatment of the deceased, Lambert Breining, for lung cancer. The case was set for docket call and trial before Judge Lucius Bunton the week of January 5, 1987. Judge Bunton informed the parties that, due to his crowded docket, they could either agree to trial before a full-time magistrate or postpone the case. The parties orally agreed to proceed to trial before a full-time magistrate. The magistrate entered findings of fact and conclusions of law on April 3, 1987.

The plaintiff appealed, arguing, as a threshold issue, that she had not consented to entry of judgment by a magistrate and that, therefore, our court lacked jurisdiction to hear the appeal. A panel of our court, unable to determine from the record whether a valid final judgment had been entered, remanded the case to the district court to make that determination. The dis-

trict court found that the parties had not clearly and unequivocally consented to entry of judgment by the magistrate. The district court therefore reviewed the case de novo and, adopting the findings of the magistrate, entered a final judgment in the case. The plaintiff appeals from that judgment.

Mr. Breining was a military retiree with a history of respiratory problems, including asthma, and a family history of cancer. After retiring from the military, Mr. Breining went to work for the El Paso Independent School District. Because he had tested positive for exposure to tuberculosis, the school system required him to obtain annual chest x-rays. These x-rays were performed at William Beaumont Army Medical Center through the year 1979.

In 1978 Mr. Breining's x-rays revealed the presence of "somewhat prominent" lung markings. Dr. Lauten, who noted the lung markings, recommended "clinical correlation and ... a repeat chest film ... for further evaluation." Over the following weeks the medical center personnel made five separate, unsuccessful attempts to contact Mr. Breining. No repeat chest films or clinical correlation took place. Mr. Breining had x-rays taken at William Beaumont again in 1979. Dr. Rhea prepared a report in connection with these x-rays, noting the presence of the lung markings but that they were "unchanged since [the] previous examination." No further tests or evaluations were recommended.

In May 1982, in response to a recommendation by his private physician who was alarmed by an abnormal chest x-ray, Mr. Breining returned to William Beaumont for further treatment. At this time, Mr. Breining was examined by the emergency room physician who recommended that Mr. Breining be admitted for further evaluations. Breining declined to be admitted and was released with instructions to report to the chest clinic within 72 hours.

Between May 13, 1982 and June 9, 1982, Mr. Breining was seen at the chest clinic on five occasions. On June 9, 1982, Dr. Smith,

---

* Circuit Judge of the Ninth Circuit, sitting by designation.

a physician in the chest clinic who had been treating Mr. Breining, noted that he was leaving the hospital and that Dr. Weisman would be following Mr. Breining's case. On June 15, 1982, a gallium scan was performed on Mr. Breining. A handwritten notation in the body of the gallium scan report, which was sent to the chest clinic, recommended that a biopsy of the right lung be performed. No follow-up was taken in the next three months, and no biopsy was performed.

On September 15, 1982, Mr. Breining appeared at the hospital complaining of a persistent cough. Cough medicine was prescribed and a follow-up visit at the chest clinic was scheduled for October 8. Mr. Breining was also instructed to return to the clinic sooner, if necessary. On September 20, Mr. Breining returned to the emergency room complaining of nausea, retching, and vomiting. Admitted to the hospital in mid-afternoon, Mr. Breining died early the following morning of lung cancer.

At trial various experts testified to measures that should have been taken following the first abnormal x-rays. Dr. Aboud, the plaintiff's expert, testified that, if necessary to negate the presence of cancer, an open lung biopsy should have been performed in 1978. The defendant's expert testified that the nature of the abnormality observed in 1978 and 1979 required monitoring by annual x-rays and that surgery would have been inappropriate.

None of the experts could give a definitive opinion as to the time period within which the onset of cancer occurred. One of the defendant's experts testified that the precursor cancer cells could have been in Mr. Breining's body in 1978, but that they would have been undetectable with then-existing technology. He believed the cancer began to grow in 1982. The plaintiff's expert was of the opinion that the cancer was present and had metastasized in 1981 or early 1982, but could not say when it started to develop. None of the experts testified that there was a reasonable medical probability that Mr. Breining was developing lung cancer before 1980.

The appellant alleges that the magistrate erroneously applied Texas law in holding that the defendant physicians were not "treating physicians." In his memorandum opinion and order the magistrate states "... these x-rays were not performed at Beaumont as part of any type of medical evaluation or request for treatment by Mr. Breining, rather, they were done to satisfy a requirement imposed upon him by the school system. Therefore, it is questionable whether, prior to 1982, the doctors at Beaumont were treating physicians providing primary care and were thus under a duty to monitor Mr. Breining's condition."

The magistrate cited no law in support of his contention that, because Mr. Breining had the x-rays taken to satisfy a requirement of the school system, the defendant physicians had no duty to monitor Mr. Breining's condition. The defendant, however, cites two cases which, at first blush, appear to support this statement.

The first of these cases is Lotspeich v. Chance–Vought Aircraft, 369 S.W.2d 705 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r. e.). In Lotspeich, the plaintiff sought damages based on the defendant's failure to inform her that x-rays disclosed that the plaintiff had tuberculosis. The x-rays were taken as part of a pre-employment physical by a physician employed by the potential employer. The court in Lotspeich held that the plaintiff and the defendant had no physician-patient relationship and therefore that the defendant owed the plaintiff no legal duty to diagnose the tuberculosis or inform the plaintiff of its existence.

The second case cited by the plaintiff in support of the proposition that the defendant physicians had no duty to monitor Mr. Breining's condition is Johnston v. Sibley, 558 S.W.2d 135 (Tex.Civ.App.—Tyler 1977, rehearing denied). In Johnston the plaintiff sued the defendant for medical malpractice. The plaintiff in Johnston had been referred by an insurance company to a physician who was retained by the insurance company to perform a medical evaluation of the plaintiff in connection with the plaintiff's disability claim. The plaintiff alleged that the defendant negligently failed

to diagnose his disability. The trial court granted summary judgment for the defendant and the plaintiff appealed. On appeal the Court of Civil Appeals affirmed the trial court judgment. The Court of Civil Appeals held that because the defendant was not retained by the plaintiff, no physician-patient relationship existed and the defendant owed no duty to the plaintiff except to conduct the examination in a manner which did not harm the patient.

In citing these cases, the defendant stresses the fact that, in each instance, the physician was hired to "evaluate," not to treat, the patient. According to the defendant, because the "evaluating" physicians in *Johnston* and *Lotspeich* owed no duty to the patient, the "evaluating" physicians in today's case similarly owed no duty to Mr. Breining. The flaw in the defendant's analysis is that the facts it emphasizes in *Johnston* and *Lotspeich* were not the determinative facts in those cases.

■ The determinative fact in both *Johnston* and *Lotspeich* was that neither patient had retained the defendant physician. In *Lotspeich* the physician was retained by the plaintiff's potential employer. In *Johnston* the physician was retained by the insurance company. By contrast, in the instant case, the school district did not retain the defendant physicians. These physicians were "retained" by Mr. Breining, who was entitled to treatment at Beaumont because of his status as a military retiree. When Mr. Breining retained the defendant physicians, he created a physician-patient relationship. Because that relationship existed, the defendant physicians had a duty to inform Mr. Breining of his abnormal x-rays to monitor his condition.

■ The appellant further contends that the magistrate's Memorandum Opinion and Order "overlooks the proximate causation between the negligent failure to follow up Mr. Breining's abnormal chest x-rays with clinical correlation, treatment, and diagnosis, and the probability of detecting lung cancer in its earliest stage where it is resectable with the probability of long-term survival." In fact, the magistrate's Memorandum Opinion clearly addresses the issue of proximate causation. The magistrate's opinion states:

Since liability cannot be made to turn upon speculation or conjecture, it is essential that the evidence show at least a reasonable probability that the Plaintiff's injury was caused by the Defendant's negligence. *Lenger v. Physician's General Hospital,* 455 S.W.2d 7093, [703] 706 (Tex.1970). Because the Plaintiffs have not established that it is reasonably probable that Mr. Breining had lung cancer prior to 1980, they have not carried their burden of proving that the failure of the Defendant, or agents of the Defendant, to initiate tests or procedures calculated to detect cancer during that period of time was a breach of the standard of care.

The magistrate's conclusion that the appellant had not established that Mr. Breining had cancer prior to 1980 is a determination of fact which must be reviewed under the clearly erroneous standard. FRCP 52(b). This conclusion is based on the fact that "... none of the experts could give a definitive opinion as to the period of time within which the onset of Mr. Breining's cancer occurred."

Despite this finding, the appellant contends that the defendants' negligence, if any, caused Mr. Breining to lose the probability of cure and survival and that this establishes proximate cause. In support of this proposition the appellant cites *Wheat v. United States,* 630 F.Supp. 699 (W.D. Tex.1986). In fact, however, the analysis in *Wheat* is inapplicable to the instant case. In *Wheat* the defendant physicians negligently failed to diagnose the plaintiff's *existing* cancer until it had advanced to an untreatable state. In this case, however, the plaintiff failed to establish that Mr. Breining had cancer prior to 1980. If Mr. Breining did not have cancer in 1978 and 1979, then failure to treat him for that disease in 1978 and 1979 could not have been the proximate cause of his death.

None of the experts in this case testified that "within reasonable medical probability Mr. Breining was developing lung cancer prior to 1980." Therefore, the magistrate's

conclusion that the appellant had not met her burden of proof on that issue was not clearly erroneous.

The appellant's final point of error asserts that the magistrate erroneously sustained defendants' counsel's objections to testimony of the appellant's rebuttal witness. The plaintiff contends that as a result, "The effect of Dr. Maro's testimony is so obtuse and obstructed that it must, and should be, done again." The plaintiff cites no specific instances in which the magistrate sustained objections to Dr. Maro's testimony, but asserts that these rulings were an abuse of the magistrate's discretion. Because the plaintiff cites no specific examples in which the magistrate allegedly abused his discretion, the plaintiff has failed to show that Dr. Maro's testimony was wrongfully excluded.

### Conclusion

The magistrate in this action incorrectly applied Texas law in holding that, because Mr. Breining sought chest x-rays at the insistence of his employer, the defendant physicians had no duty to monitor his condition. The physicians were retained by Mr. Breining, not by his employer. When Mr. Breining retained the defendant physicians, he created a physician-patient relationship which imposed upon the physicians a duty to exercise reasonable care in diagnosing and treating him.

The appellant failed, however, to establish that Mr. Breining had lung cancer prior to 1980. If Mr. Breining did not have cancer in 1978 and 1979, then failure to treat Mr. Breining for cancer at that time could not have been the proximate cause of his death. Consequently, the magistrate's finding that the defendants' negligence, if any, was not the proximate cause of Mr. Breining's injury is not clearly erroneous.

Finally, appellant's allegation that the magistrate erroneously excluded testimony of the plaintiff's rebuttal witness is a general assertion unsupported by specific instances in which the magistrate allegedly erred. Based on the information supplied by the appellant, there is no evidence to support the appellant's allegation that the

magistrate abused his discretion in excluding rebuttal testimony.

The magistrate's conclusion regarding the defendant physicians' duty to monitor Mr. Breining's condition is erroneous, but his conclusion that the physicians' negligence, if any, was not the proximate cause of Mr. Breining's death is correct. The latter, correct determination is dispositive, and the judgment of the court is

AFFIRMED.